**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

------------------------------------------------------------------------X
SHANNON ACKLEY and DANAURT GEORGE,

                                                Civil Action No.

                     Plaintiff,
-against-

                                            C**OMPLAINT**

THE CHEESECAKE FACTORY RESTAURANTS,
INC.; THE CHEESECAKE FACTORY RESTAURANTS,
INC D/B/A GRAND LUX CAFÉ; GRAND LUX CAFÉ,
LLC; DOMINIC SABINO, and DAVID ORONZI

                                  Defendants.
------------------------------------------------------------------X

Plaintiffs, Shannon Ackley and Denaurt George, as and for their Complaint against the above Defendants respectfully states upon information and belief as follows:

**NATURE OF THE ACTION**

1. Plaintiffs complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), 42 U.S.C. §1981, and to remedy violations of the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, et. seq. ("PHRA") and seeks damages to redress the injuries Plaintiffs have suffered as a result of being Discriminated against, and Retaliated against, by their employer solely due to her race, and in retaliation for their opposition and reporting the unlawful behavior to management.

1

**PARTIES**

2. Plaintiff Shannon Ackley (hereinafter also referred to as "Plaintiff Ackley") is an individual black resident of Delaware County within the Eastern District of Pennsylvania.

3. Plaintiff Danaurt George (hereinafter also referred to as "Plaintiff George") is an individual black resident of Delaware County within the Eastern District of Pennsylvania.

4. Plaintiff Ackley and Plaintiff George may at times be referred to herein collectively as Plaintiffs.

5. At all times material, Defendant Cheesecake Factory Restaurants, Inc. is a foreign limited liability corporation operating in the Commonwealth of Pennsylvania that was and upon information and belief still is located at 26901 Malibu Hill Road, Calabasas HL California, 91301.

6. At all times material, Defendant Grand Lux Café, LLC (Hereinafter "Defendant Grand") is a foreign limited liability corporation operating in the Commonwealth of Pennsylvania that was and upon information and belief still is located at 160 N Gulph Rd Ste 2395, King of Prussia, PA 19406.

7. At all times material, Defendant Cheesecake Factory Restaurant, Inc. owned and operated Defendant Grand.

8. Defendant Dominic Sabino, (hereinafter referred to as "Defendant Sabino") was and upon information and belief still is employed by Defendant Grand as a manager.

9. At all times material, Defendant Sabino held supervisory authority over Plaintiffs.

10. Defendant David Oronzi, (hereinafter referred to as "Defendant Oronzi") was and upon information and belief still is employed by Defendant Grand as a manager.

11. At all times material, Defendant Oronzi held supervisory authority over Plaintiffs.

12. At all times material, Defendants were the joint employers of PLAINTIFF.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Around December 2, 2019, Plaintiff Ackely timely filed a Charge of Discrimination and Retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") alleging violations of Title VII and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA").

14. Around February 3, 2020, Plaintiff Ackely timely filed a Charge of Discrimination and Retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") alleging violations of Title VII and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA").

15. Around November 27, 202, the EEOC issued both Plaintiff Ackley and Plaintiff George individual Notices of Right to Sue Within 90 Days.

16. This action is being commenced within ninety (90) days of Plaintiffs receiving the Notice of Right to Sue.

17. Plaintiffs have complied with all administrative prerequisites to bring this lawsuit.

18. Plaintiff's PHRA claims are still pending before the PHRC because less than one year has elapsed since PHRC assumed jurisdiction over Plaintiff's Charge.

19. Plaintiff will seek leave to amend this complaint to assert their PHRA claims against the parties referenced in ¶ 19 above. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out

3

any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

## JURISDICTION AND VENUE

20. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions under federal law under Title VII and 42 U.S.C. §1981.

21. Venue is this judicial district is proper pursuant to 28 U.S.C §1391(b) and 42 U.S.C. §2000e-5(f)(3) because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in King of Prussia, Montgomery County, Pennsylvania within the Eastern District of Pennsylvania, and Defendants are subjected to personal jurisdiction here.

## MATERIAL FACTS

1. Plaintiffs files this Complaint against the above-named Defendants, The Cheesecake Factory, Inc., The Cheesecake Factory d/b/a Grand Lux Café, LLC, Grand Lux Café, LLC, Dominic Sabino, and David Oronzi, (collectively "Defendants") pursuant to racial discrimination and harassment which was severe and pervasive and created a hostile work environment and retaliation against Plaintiffs.

2. Plaintiffs were terminated due to their race and due to retaliation to which Plaintiffs were subjected when they opposed and reported the discrimination and harassment in the workplace.

3. Plaintiff George began his employment for Defendants around the Spring of 2015, as a Server Trainer.

4.    Plaintiff Ackley also began her employment with Defendants around the Spring of 2015.

5.    Ms. Ackely was also hired as a Server Trainer.

6.    Around February 2019, Defendant Sabino was hired by Defendant Grand as a Manager.

7.    Immediately after he was hired, Defendant Sabino began making inappropriate remarks toward Plaintiffs such as, "you can afford it" and "there are two of you and I can control your money if I wanted to," with reference to Plaintiffs who were engaged to be married at the time.

8.    Around February 2019, Defendant Sabino and Defendant Oronzi began adjusting schedule Plaintiffs' schedule creating scheduling issues.

9.    The change to both Plaintiff Ackley and Plaintiff George' schedule in a drastic reduction of income for the couple.

10.    Plaintiff's Ackley made a complaint via "hot schedules," a company utilized program, on February 23, 2019, regarding Defendants Oronzi and Sabino changing of her's and Plaintiff George's schedule.

11.    A message was sent to Defendants Sabino and General Manager, Defendant Oronzi with regard to the complaint.

12.    No changes were made and the behavior was not discussed.

13.    Defendant Oronzi and Defendant Sabino consistently treated Plaintiff inferior to their white/Caucasian coworkers.

14.    This caused Plaintiff's extreme humiliation and distress and made it difficult to complete their work duties and responsibilities.

15. Around this time, Plaintiff Ackley began wore her hair in braids to work at which time Defendant Oronzi commented "Take that shit out of your hair," and "I hate when **you guys** wear those things," referring to a braided hairstyle of black individuals.

16. Defendant Oronzi made other race-oriented comments.

17. By way of example and by no means an exhaustive list, "Danny (Plaintiff George) gets along with white people because he is eloquent."

18. Around March 2019, Plaintiffs were experiencing issues with inventory behind the bar.

19. Plaintiff Ackley approaches Defendant Oronzi with her concerns about the invetory for the bar.

20. Defendant Oronzi responded to Plaitniff Ackley's concerns with, "[i]f you're not quiet you will be in D5 for two weeks straight."

21. D5 was a notoriously undesirable beginner section which was smaller than a trainer section; meaning less money for the individuals assigned to that section.

22. Plaintiff discussed the issue and the comment and debated if Plaintiff Ackely should report the inappropriate comments of Defendant Oronzi.

23. Plaintiffs decided against it because although complaints were supposed to be anonymous, Plaintiff experience lead them to believe that the complaints would be known to Defendants which would result in retaliation and continued ill treatment.

24. Around March 2019, Plaintiff Ackley happened upon a baggy with a substance resembling the illegal substance, cocaine near the restaurant bathrooms.

25. Plaintiff Ackley immediately went to management to notify them of her findings and to inform them that an inspection of the restaurant's camera footage would likely yield the culprit.

26. The day following this incident with Defendant Oronzi and Plaintiffs receive a call from corporate asking them questions about Defendant Sabino.

27. Plaintiffs had not reported the incident to corporate, only to restaurant management.

28. Corporate asks Plaintiffs if they have been spreading rumors about Defendant Sabino's involvement in the finding of the illegal substance near the bathroom.

29. Plaintiff Ackley replied the only statement she made concerning the discovery of the illegal substance was reporting it management and suggesting they look at camera footage.

30. In April 2019, coworker, Jasmine Geiger, a black female, resigned from Defendant Grand.

31. Upon information and belief, Ms. Geiger resigned out of fear for her safety and concern of racism after she was assaulted by a white female individual and no action is taken by any Defendant Grand management.

32. The week prior to this incident a black female coworker was fired for her involvement in and far less significant altercation.

33. Prior to Ms. Geiger resigning, Defendant Oronzi was overheard referring to her as a "**black bitch**."

34. In addition Plaintiffs black female individuals Ragdha Washington, Lydia (LNU), Nicole (LNU), Kyara (LNU) and Kree (LNU) who faced similar racial discrimination by Defendants.

35. By way of example but by no means and exhaustive list, Defendant Oronzi reprimanded Kree (LNU) for her eye lash and hair extensions telling her they were not permitted although there were no policies against wearing them.

36. White/Caucasian workers were not similar reprimanded for their hair styles or makeup choices.

7

37. Defendant Oronzi and Defendant Sabino continued to engage in unlawful and racist conduct and make unlawful and racist comments in the work place.

38. By way of example and by no means and exhaustive list, Defendant Sabino falsified Plaintiff Ackley's paperwork, which would be just cause for Plaintiff to be fired or at the very least written up.

39. On July 1, 2019, Defendant Sabino "coached" Plaintiff Ackley.

40. Defendant Sabino suspiciously omitted the complaining table's drink order.

41. Following the July 1, 2019, incident, an audit was requested on Plaintiffs' performance and sales.

42. An audit consists of an individual posing as a patron reviewing the individuals customer service and knowledge of menu items.

43. An audit was conducted, of both Plaintiffs, prior to them taking a long weekend.

44. Another was conducted, of both Plaitniffs, immediately upont their return.

45. Upon information and belief, not white/Caucasian employees were audited during the month of July.

46. The audit did not contain anything specific to Plaintiffs individually.

47. Rather they were grouped together.

48. Upon information and belief, this was done as a result of their race and because they were viewed as their race and not individually.

49. Defendant Oronzi overstepped his boundaries by making a phone call to a family member of Plaintiff George's uncle, Joseph Owe, accusing Plaintiffs of calling corporate and accusing Defendant Oronzi of racism.

50. At this time, neither Plaintiff called corporate in regard to Defendant Oronzi's racisms.

8

51. Around July 2019, Plaintiff Danaurt and Defendant Oronzi had a verbal altercation resulting in Defendant Oronzi threatening to "slap" Plaintiff.

52. Upon information and belief, Defendant Oronzi had never similarly threatened white/Caucasian employees.

53. On August 6, 2019, Defendant Sabino approached Plaintiff Ackley at the bar notifying her that she owed the restaurant $70.00 in tip money.

54. Plaintiff Ackley, having no reason to believe Defendant Sabino would be lying, gave him $70.00 of her tip money.

55. Upon arrival at her home, and after counting her tips from credit card purchases, Plaintiff realized that Defendant Sabino had taken money that belonged to her and not to the restaurant.

56. Plaintiff contacted Defendant Sabino and informed him that he was wrong and the seventy dollars was actually hers.

57. Defendant Sabino "Venmoed" Plaintiff Ackley seventy dollars.

58. Upon information and belief, Defendant Sabino knowingly took Plaintiff's money in an attempt to defraud Plaintiff Ackley.

59. Around August 16, 2019, Plaintiffs were suspended due to the results of the audit.

60. Around August 19, 2019, Plaintiff Ackley emails JJ Bispo in management detailing her concerns about Defendant comment and conduct and advising of her observations of racist comments and conduct, such as comments regarding "ethnic" hairstyles, derogatory racist and chauvinistic comments.

61. Additionally, Plaintiff Ackley informed Bispo that she felts that her "non ethnic" counterparts were given better opportunities "regardless of seniority or work ethic."

9

62. Plaintiffs are instructed to contact corporate surrounding the reasons for their suspension.

63. Plaintiffs contacted corporate directly and reported the discriminatory treatment black employees.

64. Whilst Plaintiff were suspended, Defendants began training two of the aforementioned Caucasian/white employees to take over Plaintiffs' positions under the presumption they had finally gotten the couple fired.

65. Defendants Oronzi and Sabino continued to harass and perpetuate the hostile work environment by spreading false rumors about Plaintiffs while they were suspended.

66. Corporate called Plaintiffs advising they could resume work at a demoted position and on final warning.

67. Upon returning to work, Plaintiff were repeatedly questioned by fellow employees about being fired.

68. Defendant Sabino and Defendant Oronzi continued to discriminated and retaliate against Plaintiffs.

69. Around September 1, 2019, Plaintiff's Ackley sent another email to management's JJ Bispo again stating that "the behavior of management has continued to be reckless and unfair."

70. Plaintiff Ackley also detailed Defendant Sabino's continuous unlawful discrimination of Plaintiff George and herself.

71. Plaintiff Ackley informed that one example of this discrimination and retaliation was to accuse Plaintiffs of stealing.

72. Defendant Sabino made this comment to both patrons and staff.

73.  In this email, Plaintiff stated "[t]his situation at this point is extremely stressful having to come to work and deal with people who are now looking at our demotions as a result of stealing you can imagine doesn't reflect well on us for anything we want to do in and out of this restaurant."

74.  Around September 4, 2019, Plaintiff Ackley observed Defendant Sabino grabbing a host, Grace (last name unknown), by the waist.

75.  Grace LNU seems visibly uncomfortable.

76.  The interaction also made Plaintiff Ackley very uncomfortable and distressed.

77.  Plaintiff Ackley reported the interaction to Defendant Grand's care line.

78.  On numerous occasions Plaintiffs overheard white/Caucasian coworkers state that they, "did not want to work with Plaintiffs and that Plaintiffs, "should be terminated."

79.  Plaintiffs continue to document the intimidation and hostile work environment to Human Resources (hereinafter "HR"). .

80.  At not time did HR follow up with Plaintiffs in regard to their complaints.

81.  On September 10, 2019, both Plaintiffs, were terminated allegedly due to "hostile work environment caused by [their] return."

82.  The "hostile work environment," rather, was caused by Defendants Sabino and Oronzi going on a campaign and eliciting employees of Defendant Grand and the termination was due to Plaintiffs' race and in retaliation for their opposition to the unlawful behavior of Defendants.

83.  As a result of Defendant's actions, Plaintiffs felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

84. As a result of the acts and conduct complained of herein, Plaintiffs have suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiffs also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

85. Plaintiffs have further experienced severe emotional and physical distress.

86. Plaintiff further claims aggravation, activation and/or exacerbation of any preexisting condition.

87. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiffs demand Punitive Damages as against the Defendant.

88. Plaintiffs claim that Defendants unlawfully discriminated against and terminated Plaintiff because of their race and Plaintiff Ackley's sex/gender and because they complained of and opposed the unlawful conduct of Defendants related to the above protected classes.

89. Plaintiffs further claim actual discharge and seeks reinstatement.

90. Plaintiffs claim a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

91. The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected Plaintiffs to on a continuous and on-going basis throughout Platinffs' employment.

92. The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

93. Plaintiffs claim alternatively that Plaintiffs are an Independent Contractor, and Plaintiffs make all applicable claims for the above conduct and facts under the applicable law

pertaining to Independent Contractors. Furthermore, in such case, Plaintiffs claim that Defendants owed and breached its duty to Plaintiffs to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

**FIRST CAUSE OF ACTION**
**DISCRIMINATION**
**UNDER TITLE VII**
**(brought by Plaintiffs against corporate Defendants only)**

94.   Plaintiff repeats and reallege each and every allegation made in the above paragraphs of this complaint.

95.   Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

96.   Title VII further provides that "it shall be an unlawful employment practice for any employer . . . controlling . . . training or retraining, including on-the-job training programs to discriminate against any individual because of [their] race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide . . . training." 42 U.S.C. § 2000e-2(d).

97.   Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

13

98. Defendant engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to her compensation, terms, conditions, training and privileges of employment because of their race and Plaintiff Ackley's sex/gender.

99. Defendant subjected Plaintiffs to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, suspension and termination, causing changes in significant changes in their employment benefits.

100. Plaintiffs' protected characteristics (race and sex/gender) played a determinative factor in the Defendants' decisions.

101. Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

102. Alternatively, Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated its actions against Plaintiff.

103. Defendants acted with the intent to discriminate.

104. Defendants acted upon a continuing course of conduct.

105. As a result of the Defendants' violations of Title VII, Plaintiffs have suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## SECOND CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT
## <u>UNDER TITLE VII</u>
## (brought by Plaintiffs against corporate Defendants only)

106. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

107. Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. <u>Harris v. Forklift Systems</u>, 510 U.S. 17, 21 (1993).

108. An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998).

109. Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. <u>Andrews v. city of Philadelphia</u>, 895 F.2d 1469, 1486 (3d Cir. 1990).

110. Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." <u>Huston v. Procter & Gamble Paper Prods. Corp.</u>, 568 F.3d 100, 105 (3d Cir. 2009).

111. The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." <u>Jensen v. Potter</u>, 435 F.3d 444, 446 (3d Cir. 2006).

112. Here, Defendants' conduct occurred because of Plaintiffs' legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally

15

protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile, or abusive.

113. The discriminatory conduct directly refers to Plaintiffs' race and Plaitniff Ackley's sex/gender.

114. Plaintiff's supervisors had the authority to control Plaintiffs' work environment, and they abused that authority to create a hostile work environment.

115. Derogatory and racists conduct and comments filled the environment of Plaintiffs' work area.

116. Defendants knew that the derogatory and racists conduct and comments filled Plaintiff's work environment.

117. The derogatory and racist conduct and comments occurred on an almost if not daily basis.

118. The derogatory and racist comments and conduct caused Plaintiffs to sustain severe emotional distress.

119. Plaintiffs subjectively regarded the derogatory and racists comments and conduct as unwelcome, unwanted and she objectively opposed the conduct.

120. The conduct was both severe and pervasive.

121. The conduct was emotionally damaging and humiliating.

122. The conduct unreasonably interfered with Plaintiffs' work performance.

123. The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiffs' employment.

124. The Defendants provided a futile avenue for complaint.

125. The Defendants retaliated against Plaintiffs for their complaints.

126. The Defendants acted upon a continuing course of conduct.

127. As a result of the Defendants' violations of Title VII, Plaintiffs have suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**THIRD CAUSE OF ACTION**
**RETALIATION**
**UNDER TITLE VII**
**(brought by Plaintiffs against corporate Defendants only)**

128. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

129. Title VII protects employees from retaliation for attempting to exercise their rights under the Act:

42 U.S.C. § 2000e-3. Other unlawful employment practices

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

130. The Supreme Court in Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

131. Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

132. Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

133. Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62 (rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

134. "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995); see also Moore, 461 F.3d at 341 (finding that a transfer of a

police officer from a district could constitute actionable retaliation because it "is the kind of action that might dissuade a police officer from making or supporting a charge of unlawful discrimination within his squad.").

135. An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. See Moore, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class.")

136. Title VII not only bars retaliation against the employee who engaged in the protected activity; it also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity. See Thompson v. North American Stainless, LP, 131 S. Ct. 863, 868 (2011).

137. Here, the Defendants discriminated against Plaintiffs because of their protected activity under Title VII.

138. Plaintiffs acted under a reasonable, good faith belief that their, or someone else's, right to be free from discrimination on the basis of race and sex/gender was violated.

139. Plaintiffs were subjected to materially adverse actions at the time or after the protected conduct took place.

140. There was a causal connection between the Defendants' materially adverse actions and Plaintiffs' protected activity.

141. The Defendants actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

142. The Defendants acted upon a continuing course of conduct.

19

143. Plaintiffs will rely on a broad array of evidence to demonstrate a causal link between their protected activity and the Defendants' actions taken against them, such as the unusually-suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiffs after Defendants became aware of their protected activity.

144. As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**FOURTH CAUSE OF ACTION**
**DISCRIMINATION**
**UNDER 42 U.S.C. SECTION 1981**
**(brought by Plaintiffs against all named Defendants)**

145. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

146. Section 1981 prohibits race discrimination in the making and enforcing of contracts. 42 U.S.C. §1981.

147. 42 U.S.C. §1981 states in relevant part as follows:

a "Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens,

20

and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

b   "Make and enforce contracts" includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

148.   The Third Circuit has stated that "a wide panoply of adverse employment actions may be the basis of employment discrimination suits under Title VII claims interchangeably with respect to adverse employment actions. See, e.g., Barnes v. Nationwide Mut. Ins, Co., 598 Fed. Appx. 86, 90 (3d Cir, 2015); Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (a Title VII case); Thompson v. City of Waco 764 F.3d 500, 503 (5th Cir. 2014) (a Section 1981 case).

149.   Under Section 1981 both employers and individual employees can be liable for discrimination in employment. See Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir. 2001) ("Although claims against individual supervisors are not permitted under Title VII, this court has found individual liability under § 1981 when [the defendants] intentionally cause an infringement of rights protected by Section 1981, regardless of whether the [employer] may also be held liable.") Al-Khazraji v. Saint Francis College, 784 F.2d 505, 518 (3d Cir. 1986 ("employees of a corporation may become personably liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable.")

150.   Defendants violated Section 1981 by intentionally discriminating against the Plaintiffs in a serious tangible way with respect to their compensation, terms, conditions, and/or privileges of employment.

151. Plaintiffs' race characteristics were a determinative or motivating factor in Defendants' employment actions.

152. Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiffs are pretextual and can readily be disbelieved.

153. Plaintiffs' protected status played a motivating part in the Defendants' decisions even if other factors may have also motivated Defendants' actions against Plaintiffs.

154. Defendants acted with the intent to discriminate.

155. Defendants acted upon a continuing course of conduct.

156. Defendant acted with malice or reckless indifference to Plaintiffs' federally protected rights and as a result there should be an award of punitive damages against Defendants.

157. As a result of Defendants' violations of Section 1981, Plaintiffs have suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.


**FIFTH CAUSE OF ACTION**
**HOSTILE WORK ENVIRONMENT**
**UNDER 42 U.S.C. SECTION 1981**
**(brought by Plaintiffs against all named Defendants)**

158. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

159. The standards for a hostile work environment claim are identical under Title VII and Section 1981. See, e.g., Verdin v. Weeks Marine Inc., 124 Fed. Appx. 92, 95 (3d Cir. 2005) ("Regarding [plaintiff's hostile work environment claim, the same standard used

under Title VII applies under Section 1981."); Ocasio v. Leigh Valley Family Health Center, 92 Fed. Appx 876, 879-80 (3d Cir. 2004)("As amended by the 1991 Civil Rights Act, § 1981 now encompasses hostile work environment claims, and we apply the same standards as in a similar Title VII claim.").

160. While the standards of liability are identical under Title VII and Section 1981, there is a major difference in the coverage of the two provisions: under Title VII, only employers can be liable for discrimination in employment, but under Section 1981, individuals, including other employees, can be liable for racial discrimination against an employee. See Cardenas, 269 F.3d at 268; Al-Khazarji, F.2d at 518.

161. Defendants subjected Plaintiff to harassment motivated by Plaintiffs race characteristics.

162. Defendants' conduct was not welcomed by Plaintiffs.

163. Defendants' conduct was so severe and/or pervasive that a reasonable person in Plaintiffs positions would find the work environment to be hostile or abusive.

164. Plaintiffs believed their work environment was hostile and abusive as a result of Defendants' conduct.

165. As a result of the hostile work environment, Plaintiffs suffered a "tangible employment action" defined as a significant change in employment status.

166. Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, failing to provide a reasonable way for Plaintiffs to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

167. Defendants acted upon a continuing course of conduct.

168. As a result of Defendants' violations of Section 1981, Plaintiffs have suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**SIXTH CAUSE OF ACTION**
**RETALIATION**
**UNDER 42 U.S.C. SECTION 1981**
**(brought by Plaintiffs against all named Defendants)**

169. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

170. The Supreme Court has held that retaliation claims are cognizable under Section 1981 despite the absence of specific statutory language. CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008).

171. The Third Circuit has indicated that the legal standards for a retaliation claim under Section 1981 are generally the same as those applicable to a Title VII retaliation claim. See Cardenas, 269 F.3d at 263 ("[T]o establish a prima facie retaliation claim under Title VII [or] § 1981 … , [a plaintiff] must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action"); Khair v. Campbell Soup Co., 893 F. Supp. 316, 335-36 (D.N.J. 1995)(noting that with respect to retaliation claims, "The Civil Rights Act of 1991 extended § 1981 to the reaches of Title VII").

24

172. The most common activities protected from retaliation under Section 1981 and Title VII are: (1) opposing unlawful discrimination; (2) making a charge of employment discrimination; (3) testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Section 1981. See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1299 (3d Cir. 1997) (filing discrimination complaint constitutes protected activity), overruled on other grounds by Burlington N. & S.F. Ry. Co. v. White, 126 S. Ct. 2405 (2006); Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997) (advocating equal treatment was protected activity); Aman v. Cort Furniture, 85 F.3d 1074, 1085 (3d Cir. 1989) (under Title VII's anti-retaliation provisions "a Plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed;'"); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United Stated Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Milner v. CIGNA Corp., 47 F,3e 58 (3d Cir. 1995).

173. Here, Defendant discriminated against Plaintiffs because of their protected activity under Section 1981.

174. Plaintiff were acting under a reasonable, good faith belief that their, or someone else's, right to be free from discrimination on the basis of race was violated.

175. Plaintiff were subjected to a materially adverse action at the time, or after the protected conduct took place.

176. There was a causal connection between Defendants' materially adverse actions and Plaintiffs' protected activity.

177. Defendants acted upon a continuing course of conduct.

178.    Plaintiffs will rely on a broad array of evidence to demonstrate a causal link between their protected activity and Defendants' actions taken against them, such as the usually-suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiffs after Defendants became aware of their protected activity.

179.    As a result of Defendants' violations of Section 1981, Plaintiffs have suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**SEVENTH CAUSE OF ACTION**
**AIDING AND ABETTING**
**UNDER STATE LAW**
**(brought by Plaintiffs against all named Defendants)**

180.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

181.    Plaintiffs PHRA claims are still pending before the PHRC because less than one year has elapsed since PHRC assumed jurisdiction over Plaintiff's Charge.

182.    Plaintiffs will seek leave to amend this complaint to assert their PHRA claims against the parties referenced in ¶ 26 above. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

**EIGHTH CAUSE OF ACTION**
**RETALIATION**
**UNDER STATE LAW**
**(brought by Plaintiffs against all named Defendants)**

183. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

184. Plaintiffs PHRA claims are still pending before the PHRC because less than one year has elapsed since PHRC assumed jurisdiction over Plaintiff's Charge.

185. Plaintiffs will seek leave to amend this complaint to assert their PHRA claims against the parties referenced in ¶ 26 above. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleasing), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

**NINTH CAUSE OF ACTION**
**AIDING AND ABETTING**
**UNDER STATE LAW**
**(brought by Plaintiffs against all named Defendants)**

186. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

187. Plaintiffs PHRA claims are still pending before the PHRC because less than one year has elapsed since PHRC assumed jurisdiction over Plaintiff's Charge.

188. Plaintiffs will seek leave to amend this complaint to assert their PHRA claims against the parties referenced in ¶ 26 above. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the

original pleasing), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress, back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

*Attorneys for Plaintiff*

By: *Catherine W. Smith, Esq.*

Catherine W. Smith, Esq.
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Date: November 27, 2020          Catherine@dereksmithlaw.com

28