IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| SHANNON ACKLEY et al | CIVIL ACTION |
|---|---|
| v. | NO. 20-5983 |
| THE CHEESECAKE FACTORY RESTAURANTS, INC. et al | |

**MEMORANDUM RE MOTION TO DISMISS AND COMPEL ARBITRATION**

**Baylson, J.**                                                                                                          **July 26, 2021**

**I.      Introduction**

Plaintiffs Shannon Ackley and Danaurt George bring this case against Defendants the Cheesecake Factory Restaurants, Inc., the Cheesecake Factory Restaurants, Inc. d/b/a Grand Lux Café, Grand Lux Café, LLC, Dominic Sabino, and David Oronzi.  Plaintiffs worked at the Grand Lux Café and allege that they were subject to discriminatory treatment and a hostile work environment based on their race, and retaliated against.  Defendants filed the present Motion to Dismiss and Compel Arbitration, seeking to require Plaintiffs to address their claims in arbitration based on an agreement Plaintiffs signed at the start of their employment.  For the reasons that follow, Defendants' Motion will be granted.

**II.     Facts and Procedural History**

Plaintiffs are both Black and were both employed at the Grand Lux Café in King of Prussia, PA.  ECF 15, Opp'n 3.  Around the time of their offers of employment, both Plaintiffs signed a Mutual Agreement to Arbitrate Claims ("MAA").  Opp'n 3; ECF 10-2, "Exhibit 2."  The MAA states:

> The Company and I understand and agree that the arbitration of disputes and claims under this Agreement shall be in lieu of a court trial before a judge and/or a jury.  **The Company and I understand and agree that, by signing this Agreement, we are expressly**

1

> **waiving any and all rights to a trial before a judge and/or a jury regarding any disputes and claims which we now have or which we may in the future have that are subject to arbitration under this Agreement.**

Exhibit 2 (emphasis in original). The MAA also includes a "Waiver of Right to File Class, Collective, or Representative Action" section stating: "The Company and I agree that we must bring all claims covered by this Agreement against the other Party only in the Parties' individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." Id. However, the MAA includes the option to opt out of the class waiver provision by sending a letter to corporate headquarters within sixty days of signing the agreement. Id. Around the same time, both Plaintiffs signed a Handbook Receipt & Confidentiality Agreement which includes the following paragraph:

> I RECOGNIZE THAT DIFFERENCES MAY ARISE BETWEEN ME AND THE COMPANY DURING OR FOLLOWING MY EMPLOYMENT WITH THE COMPANY. I AGREE TO PARTICIPATE IN IMPARTIAL DISPUTE RESOLUTION PROCEEDINGS AS A CONDITION OF AND AS CONSIDERATION FOR THE OFFER OF EMPLOYMENT BY THE COMPANY. IF I, OR THE COMPANY, DETERMINE THAT THE COMPANY'S INTERNAL PROCEDURES FOR HANDLING CLAIMS (INCLUDING BUT NOT LIMITED TO, REPORTING CLAIMS TO MY MANAGER, THE AREA DIRECTOR OF OPERATIONS, THE CARELINE AND/OR THE STAFF RELATIONS DEPARTMENT), HAVE NOT RESULTED IN A MUTUALLY ACCEPTABLE RESOLUTION OF DISPUTES BETWEEN ME AND THE COMPANY, I AGREE TO PARTICIPATE IN ARBITRATION PROCEEDINGS.

Id.

Plaintiffs filed complaints with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), and on November 27, 2020 the EEOC issued both Plaintiffs "right to sue" notices. Compl. ¶¶ 13–15. Plaintiffs filed this lawsuit on the same day. See ECF 1. The Complaint alleges nine counts against Defendants:

1. **Count I**: Discrimination in violation of Title VII of the Civil Rights Act of 1964;

2. **Count II**: Hostile Work Environment in violation of Title VII;

3. **Count III**: Retaliation in violation of Title VII;

4. **Count IV**: Discrimination in violation of 42 U.S.C. § 1981;

5. **Count V**: Hostile Work Environment in violation of 42 U.S.C. § 1981;

6. **Count VI**: Retaliation in violation of 42 U.S.C. § 1981;

7. **Count VII**: Aiding and Abetting in violation of the Pennsylvania Human Relations Act ("PHRA");

8. **Count VIII**: Retaliation in violation of the PHRA; and

9. **Count IX**: Aiding and Abetting in violation of the Pennsylvania Human Relations Act ("PHRA").[1]

On April 12, 2021, Defendants filed the present Motion to Dismiss and Compel Arbitration.  ECF 10, Def. Mot.  Plaintiffs responded on April 28, 2021.  ECF 12, Opp'n.  Defendants filed a reply on May 5, 2021.  ECF 17, Reply.

### III. Standard of Review

Plaintiffs argue that the Court should apply the Rule 56 standard to this Motion to Compel because "the issue of arbitrability is not apparent on the face of the Complaint" and "the issue of arbitrability is not readily apparent from movant's exhibits," relying on <u>Guidotti v. Legal Helpers Debt Resolution, LLC.</u>, 716 F.3d 764 (3d Cir. 2013).  As this contention is not disputed, and the Court will rely on documents attached to the present Motion, it is appropriate to apply the Rule 56 standard.

Summary judgment is proper if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[1] Count IX appears to be the same as Count VII.

56(a).  A dispute is genuine—and will preclude a grant of summary judgment—if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If a fact "might affect the outcome of the suit under the governing law," the factual dispute is material and will allow the nonmovant to survive summary judgment.  Id.  Only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" is a grant of summary judgment appropriate.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the district court is obligated to "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor."  In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015).

**IV.   Unconscionability**

Defendants argue that Plaintiffs are bound by an arbitration agreement they signed when they began their employment which requires them to address these claims in arbitration.  Plaintiffs respond that the arbitration agreement is unconscionable and therefore unenforceable.  Defendants then argue that specific precedent demonstrates that these types of agreements are valid and enforceable.

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  Put another way, plaintiffs can avoid arbitration by invoking "[g]enerally

applicable contract defenses, such as fraud, duress, or unconscionability." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996) (citations omitted).

"Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." MacPherson v. Magee Mem. Hosp. for Convalescence, 128 A.3d 1209, 1221 (Pa. Super. 2015). Under Pennsylvania law, "the party challenging an arbitration agreement has the burden to demonstrate that the agreement is both procedurally and substantively unconscionable." Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 230 (3d Cir. 2008) (citing Salley v. Option One Mortg. Corp., 925 A.2d 115, 119–20 (Pa. 2007)). "Procedural unconscionability refers specifically to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language. Substantive unconscionability looks to whether the arbitration provision unreasonably favors the party asserting it." Id. at 228. Where procedural unconscionability "is very high, a lesser degree of substantive unconscionability may be required, and presumably, vice-versa." Quilloin v. Tenet Health System Phila., Inc., 673 F.3d 221, 230 (3d Cir. 2012).

 a. **Substantive Unconscionability**

"Substantive unconscionability looks to the terms of the arbitration clause itself and whether the arbitration clause is unreasonably favorable to the party with greater bargaining power." Griffen v. Alpha Phi Alpha, Inc., No. 06-1735, 2007 WL 707364, at *6 (E.D. Pa. Mar. 2, 2007) (Pratter,J.) (citing Witmer v. Exxon Corp., 432 A.2d 1222, 1228 (Pa.1981)). "An arbitration agreement cannot be construed as substantively unconscionable where it does not alter or limit the rights and remedies available to a party in the arbitral forum." Quilloin, 673 F.3d at 230 (quotation

5

omitted). Plaintiffs argue that their rights are limited because the arbitration agreement required them to waive their right to pursue a class or other collective action.

In AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011), the Supreme Court held that "a state law that seeks to impose class arbitration despite a contractual agreement for individualized arbitration is inconsistent with, and therefore preempted by, the FAA, irrespective of whether class arbitration is desirable for unrelated reasons." Litman v. Cellco P'ship, 655 F.3d 225, 231 (3d Cir. 2011). Since then, the Supreme Court has ruled on similar issues and upheld this decision each time. See, e.g. Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1619 (2018) ("Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings.").

The MAA is no different than the types of arbitration agreements that the Supreme Court has repeatedly held to be permissible. Plaintiffs may not avoid arbitration because the agreement they signed requires them to proceed individually.

### b. Procedural Unconscionability

As Plaintiffs have not demonstrated substantive unconscionability, the Court is not required to address procedural unconscionability but will proceed with the analysis regardless. A contract is procedurally unconscionable where "there was a lack of meaningful choice in the acceptance of the challenged provision." Salley, 925 A.2d at 119. However, "more than a disparity in bargaining power is needed in order to show that an arbitration agreement was not entered into willingly." Great W. Mortg. Corp. v. Peacock, 110 F.3d 222, 229 (3d Cir. 1997). "Parties frequently possess varying degrees of bargaining power, and there is a range of ordinary and acceptable bargaining situations. Our role is to distinguish acceptable bargaining situations

from those which violate strong public policy." Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 235 (3d Cir. 2012) (quotations omitted).

Plaintiffs argue that the MAA is procedurally unconscionable because employment is "essential to a person's livelihood" and therefore they were "under economic compulsion" and did not have the ability to reject or negotiate the terms of the MAA. However, Plaintiffs have not made any argument beyond stating that their employer had a better bargaining position. Further, the agreement provided Plaintiffs the opportunity to opt out of the class waiver provision, the provision which they have objected to here. Therefore, Plaintiffs have not demonstrated that the MAA violates public policy or was signed without any meaningful choice.

## V.     Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss and Compel Arbitration will be granted. An appropriate Order follows.

O:\CIVIL 20\20-5983 Ackley v. The Cheesecake Factory et al\20-5983 Memorandum re Arbitration.docx